FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
5:03 pm, Mar 20, 2026
JEFFREY P. COLWELL, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

_____

Civil Action No. _____

JO DOLMAS,

Plaintiff,

v.

VITALANT, INC., et al

an Arizona nonprofit corporation doing business in Colorado,

Defendant.

_____

COMPLAINT AND JURY DEMAND

_____

Plaintiff Jo Dolmas, for her Complaint against Defendant Vitalant, Inc. ("Vitalant"), alleges as follows:

I. NATURE OF THE ACTION

1. This is an employment-discrimination, retaliation, failure-to-accommodate, interference, and equitable-relief action arising under federal law.

2. Plaintiff brings this action principally under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

1

3. Plaintiff alleges that after nearly two decades of service drawing blood and supervising donor-center operations, Vitalant and its managers began targeting her because of her age, her disability and medical restrictions arising from work-related hand injuries, her opposition to unlawful age- and disability-based treatment, her internal complaints, and her resort to the Equal Employment Opportunity Commission ("EEOC").

4. Plaintiff further alleges that Vitalant subjected her to a course of discriminatory and retaliatory conduct that included false accusations, a sharply downgraded evaluation, a threatened and then imposed performance-improvement process, pressure to abandon her Team Lead role, refusal to accommodate medical restrictions, coercion to return to work despite restrictions, forced depletion of earned leave, humiliation based on age stereotypes, and pressure to "shadow" and emulate unsafe blood-handling practices she reasonably believed violated policy and law.

5. Plaintiff further alleges that, after she pursued EEOC relief and while her administrative charge was pending, Vitalant rolled out and/or attempted to impose a mandatory arbitration agreement requiring employees to arbitrate employment claims as a condition of continued employment. On information and belief, Vitalant's timing, method, and coercive presentation of that arbitration requirement were intended, at least in part, to deter employees from pursuing statutory rights, to chill participation in EEOC proceedings, and to limit court access after protected activity had already occurred.

6. Plaintiff seeks damages, equitable relief, declaratory relief, attorney fees to the extent available by statute if counsel later appears, costs, reinstatement of lost terms and conditions of employment, removal of retaliatory discipline and evaluation materials, accommodation, and such other relief as the Court deems just and proper.

## II. JURISDICTION AND VENUE

7.  This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

8.  This Court also has jurisdiction under 28 U.S.C. § 1343 because this action seeks to redress the deprivation of federal civil rights secured by Acts of Congress providing for equal rights.

9.  Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to these claims occurred in Denver, Colorado, where Plaintiff worked for Vitalant.

10. Venue is also proper under the special venue provisions applicable to federal employment-discrimination actions because the relevant employment practices were committed in this District, Plaintiff worked in this District, and Vitalant does business in this District.

## III. THE PARTIES

**PIAINTIFF**
**Jo Dolmas**
**Plaintiff, Pro Se**
**616 Albion Street**
**Denver, Colorado 80220**
**Phone: 303-324-7648**
**Email:Joadol@hotmail.com**

**Defendant One:**
**Vitalant, Inc.**
**777 Yosemite Street**
**Denver, Colorado 80230**

**Defendant Two:**
**Jennifer Smith**
**777 Yosemite Street**
**Denver, Colorado 80230**

**Defendant Three:**
**Myra Lopez**
**777 Yosemite Street**
**Denver, Colorado 80230**

**Defendant Four:**
**Myron Johnson**
**777 Yosemite Street**
**Denver, Colorado 80230**

**Defendant Five:**
**Walter Knob**
**777 Yosemite Street**
**Denver, Colorado 80230**

### DEFENDANT INTRODUCTION

**Defendant: Vitalant, Inc. A blood bank. Operates a human blood donor center in Denver, Colorado. Operates as non-profit out of Arizona.**

**Defendant: Jennifer Smith. Vitalant Human Resource agent.**

**Defendant: Myra Lopez. Vitalant Donor Center Supervisor.**

**Defendant: Myron Johnson. Vitalant Manager of Donor Care.**

**Defendant: Walter Knob. Assistant Donor Care Supervisor.**

11. Plaintiff Jo Dolmas is a natural person residing in Denver, Colorado.

12. Plaintiff has been employed by Vitalant since approximately December 2006, initially through Vitalant's predecessor and later under the Vitalant name.

13. Plaintiff has long worked in blood-collection operations and, at all relevant times, served as a Team Lead for the Sunday-through-Tuesday shift at Vitalant's Denver donor-center operations.

14. Plaintiff is an "employee" within the meaning of the ADEA and the ADA.

4

15. Plaintiff is over forty years of age and therefore is a member of the class protected by the ADEA.

16. Plaintiff has suffered from carpal tunnel syndrome, trigger finger, post-surgical limitations, and related hand impairments that substantially limited one or more major life activities, including gripping, lifting, pinching, typing, and performing manual tasks, and/or she was regarded by Vitalant as having such impairments.

17. Defendant Vitalant, Inc. is, on information and belief, an Arizona nonprofit corporation that operates donor-center and blood-collection facilities in multiple states, including Colorado.

18. Vitalant employed well over the statutory minimum number of employees required for liability under the ADEA and the ADA at all relevant times.

19. At all relevant times, Vitalant acted through its officers, managers, supervisors, human-resources personnel, and other agents acting within the course and scope of their authority, including but not limited to Jennifer Smith, Myra Lopez, Myron Johnson, Walter Knob, and Chief People Officer Manny Ocasio.

20. Whenever this Complaint refers to acts of Vitalant, such allegations include acts performed by its officers, managers, supervisors, human-resources personnel, and agents within the scope of their employment or with apparent authority.

## IV. ADMINISTRATIVE PREREQUISITES AND EXHAUSTION

21. Plaintiff filed a charge of discrimination with the EEOC concerning the discriminatory, retaliatory, and hostile conduct described herein.

22. In that administrative filing, Plaintiff alleged, among other things, age discrimination, disability discrimination, retaliation, a hostile work environment, failure to address unsafe donor-floor practices, forced use of vacation following work-related injuries and surgeries, and efforts by management to push her out of her Team Lead role.

23. Plaintiff's EEOC charge described, among other matters, that supervisors and managers falsely claimed there were complaints about her team; that management criticized her for enforcing the no-cell-phone policy on the donor floor; that she was downgraded in her 2023/2024 evaluation; that she was placed on a performance plan after reporting safety and injury issues; that she was pressured to return early from work-related surgery or use vacation time; that HR refused to meet privately with her; that managers told her she was "too old" and lacked "modern skills"; and that Vitalant failed to accommodate her medical restrictions.

24. Under the ADEA, a plaintiff may sue after filing a charge and waiting the statutory period. See 29 U.S.C. § 626(d).

25. Under Title VII-style administrative procedures incorporated into the ADA, a claimant ordinarily must file a charge and obtain a notice of right to sue before pressing an ADA claim in court. See 42 U.S.C. § 12117(a); *Bertsch v. Overstock.com*, 684 F.3d 1023, 1030 (10th Cir. 2012).

26. Plaintiff alleges that more than sixty days have elapsed from the filing of her EEOC charge, rendering her ADEA claims ripe.

27. Plaintiff further alleges, upon information presently available, one of the following:

a. the EEOC has issued a notice of right to sue as to some or all of Plaintiff's federal claims; or

6

b. if the EEOC has not yet issued such notice as to the ADA-based claims or as to later post-charge retaliation, Plaintiff requests that those claims be stayed, or that Plaintiff be granted leave to amend or supplement once the notice issues, rather than dismissed with prejudice.

28. Plaintiff expressly invokes *Fort Bend County v. Davis*, 587 U.S. 541, 548-52 (2019), and *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018), because administrative exhaustion in this context is not jurisdictional, even though it remains a mandatory claims-processing rule if timely invoked.

29. Plaintiff further acknowledges and preserves the Tenth Circuit's rule that later discrete retaliatory acts ordinarily require separate exhaustion. See *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002); *Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003); *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007); *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1103-06 (10th Cir. 2011).

30. Accordingly, Plaintiff pleads in the alternative that the post-charge mandatory-arbitration event either:

a. falls within the scope of the existing administrative charge because it grew directly out of the protected activity already before the EEOC and serves at minimum as background evidence of retaliatory motive; or

b. constitutes a later discrete act for which Plaintiff will amend or supplement after additional exhaustion, if the Court deems separate exhaustion required.

31. Plaintiff further alleges that, even if the Court concludes separate exhaustion is required for the arbitration-agreement event as a standalone claim, the event remains probative

evidence of retaliatory intent, intimidation, coercion, and an ongoing effort to chill

protected activity.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's long service and strong work history

32. Plaintiff began working for Vitalant's predecessor in approximately December 2006.

33. Plaintiff initially worked in mobile blood-collection operations.

34. Plaintiff was later promoted to Team Lead.

35. In or about 2016, Plaintiff transferred to Customer Care.

36. When Customer Care was later eliminated, Plaintiff transferred to the Lowry donor

center as Team Lead.

37. Plaintiff worked the Sunday-through-Tuesday shift, approximately 6:30 a.m. to 7:15 p.m.

38. Plaintiff's job required her not only to supervise employees and donor-floor operations,

but also personally to draw blood from donors.

39. Plaintiff performed these duties for approximately seventeen to eighteen years.

40. For most of her career, Plaintiff received strong performance ratings, including ratings

above 3.7, and she remained in a supervisory position for many years.

41. Plaintiff had not previously been subject to formal corrective action of the type later

imposed upon her.

### B. Management's hostility toward Plaintiff intensified in 2023

42. In or around spring 2023, Vitalant management abruptly began targeting Plaintiff and her

team.

8

43. Plaintiff attended regular management meetings with Defendant's supervisory personnel.

44. At a meeting in approximately April or May 2023, Plaintiff was unexpectedly taken to a separate meeting involving Myron Johnson and Steve Cihura.

45. At that meeting, Johnson accused Plaintiff's shift of generating complaints, being unfriendly, being unhelpful, and allegedly causing a front-desk employee to quit.

46. Plaintiff responded that these allegations were false.

47. Plaintiff explained that the former front-desk employee had left because of health issues.

48. Plaintiff asked to see the supposed complaints so she could understand and address them.

49. Johnson could not produce any complaints.

50. Plaintiff was thus accused, criticized, and stigmatized without documentation, specifics, witnesses, or a fair opportunity to respond.

51. At or around the same time, Plaintiff raised legitimate concerns that the donor-center supervisor was often absent when needed.

52. Plaintiff also raised concerns that Vitalant's no-cell-phone policy was not being enforced even though employees were using phones, texting, and engaging in calls on the donor floor while drawing blood from donors.

53. Plaintiff believed, and continues to believe, that such conduct was unsafe, unprofessional, and potentially dangerous to donors and blood integrity.

54. Plaintiff's efforts to enforce donor-floor safety rules were met not with support, but with criticism and undermining.

55. Rather than support Plaintiff's safety concerns, Vitalant's managers began treating Plaintiff as the problem.

**C. Plaintiff suffered work-related injuries and disclosed restrictions**

9

56. By 2023, after many years of repetitive blood-drawing duties, Plaintiff developed hand and repetitive-motion injuries, including trigger finger and carpal tunnel symptoms.

57. Plaintiff informed management that her blood-drawing work had caused or contributed to these hand conditions and that surgery would be required.

58. In June 2023, Plaintiff underwent surgery for trigger finger in her right ring finger.

59. The injury and treatment were treated as work-related, and workers' compensation covered the surgery and time off.

60. Plaintiff returned after a short recovery on modified duty and later resumed fuller duties.

61. In January 2024, Plaintiff underwent a second surgery, this time involving her left hand.

62. This injury and time off were also deemed work-related.

63. Following the second surgery, Plaintiff remained under restrictions and was unable fully to use her left hand for gripping, pinching, lifting, typing, and drawing blood.

64. Plaintiff communicated these restrictions to management.

65. Vitalant was therefore aware that Plaintiff had physical limitations, work restrictions, and a need for accommodation or at least temporary adjustment.

**D. Vitalant pressured Plaintiff to return despite restrictions and forced leave use**

66. Despite knowledge of Plaintiff's restrictions, supervisor Myra Lopez contacted Plaintiff and told her that she needed to return to work at full duty or use earned vacation days for any additional time off.

67. Plaintiff explained that the injury was work-related, that restrictions remained in effect, and that she could not safely resume unrestricted duties.

68. Plaintiff was nevertheless told, in substance, that returning under restriction was "out of [management's] control," and that she had to come back full duty, use vacation, or risk termination.

69. Plaintiff then contacted Safety Manager Garett Garland to ask why she was being forced back despite surgery and restrictions.

70. Rather than protect Plaintiff's rights, Garland told Plaintiff that there was a "new job" for her at the front desk greeting donors and scheduling appointments.

71. Garland further told Plaintiff to return and "do the best" she could or risk losing her job.

72. Plaintiff returned on or about February 4, 2024, under coercive circumstances and despite ongoing restrictions.

73. When Plaintiff arrived, Lopez asked how she was doing, but when Plaintiff reiterated that she was still restricted and should not have been performing unrestricted work, Lopez ignored the substance of Plaintiff's concern.

74. Instead, Lopez told Plaintiff about a returning employee and suggested that the person was "shooting for" Plaintiff's Team Lead position and would be a "perfect fit."

75. This message conveyed that Plaintiff's job was in jeopardy and that management was preparing to replace her.

76. Plaintiff reasonably understood this as part of an effort to push her out of the Team Lead role because of age, disability, and/or her complaints.

**E. Plaintiff's evaluation was abruptly downgraded to set up discipline**

77. On or about March 6, 2024, Lopez delivered Plaintiff's 2023 evaluation.

78. Plaintiff received a 2.55 rating, the lowest of her career.

11

79. This low rating stood in stark contrast to Plaintiff's prior years of strong evaluations.

80. The downgraded rating relied in part on the earlier unsupported accusations about supposed complaints against Plaintiff and her team.

81. Plaintiff immediately recognized that the new score positioned management to place her on a Personal Improvement Plan ("PIP") or equivalent discipline.

82. When Plaintiff asked Lopez whether she had seen improvement in Plaintiff's team since the earlier management meeting, Lopez admitted that she had noticed improvement.

83. Yet that improvement was not fairly reflected in the evaluation.

84. Lopez also told Plaintiff that she was doing "a great job" at the front desk and suggested that front-desk work would be less stressful and easier on Plaintiff's body.

85. Plaintiff understood this as pressure to relinquish the Team Lead position because management considered her too old, too physically impaired, or too inconvenient to remain there.

**F. Plaintiff was placed on a retaliatory and pretextual performance plan**

86. On or about March 19, 2024, Lopez directed Plaintiff to a meeting that Plaintiff initially believed would be a routine one-on-one.

87. Instead, Lopez took Plaintiff to an HR conference room where HR representative Jennifer Smith was waiting.

88. At that meeting, Lopez and Smith issued Plaintiff an "Improvement Plan."

89. Plaintiff asked what she had specifically done wrong and what actual complaints justified the plan.

90. Lopez and Smith did not provide a legitimate, documented factual basis.

12

91. Smith told Plaintiff, in substance, that this was the step Vitalant takes "to let an employee go."

92. Plaintiff asked whether she had ever had corrective action in her many years with the company.

93. Smith acknowledged that she had not.

94. Plaintiff was nevertheless ordered to sign the plan and improve within approximately forty-five days or face termination.

95. Plaintiff took the document home, reviewed it, and then emailed Smith requesting a private meeting with HR.

96. Vitalant policy, as Plaintiff understood it, contemplated that HR could meet with employees regarding workplace concerns.

97. Smith refused to meet privately and instead stated that because management drove the plan, Lopez and possibly Johnson should be included.

98. Plaintiff's concern, however, was that Lopez and Johnson themselves were central to the harassment, discrimination, retaliation, and safety concerns she needed to report.

99. HR thus denied Plaintiff a meaningful neutral avenue to report her concerns and instead aligned itself with the managers whose conduct Plaintiff was challenging.

100. Plaintiff reasonably perceived the PIP and HR response as punitive, retaliatory, and pretextual.

## G. Age-based comments and stereotyping infected management's treatment of Plaintiff

101. Plaintiff was told by Walter Knob and others that she was "too old" for the job.

102. Plaintiff was also told that she lacked computer or "modern" skills.

103.    These comments were demeaning, age-based, and designed to portray Plaintiff as obsolete.

104.    Plaintiff had, however, successfully performed her job for years, had served in leadership roles, and had long possessed the practical and technological skills necessary to do her work.

105.    Vitalant's repeated suggestions that Plaintiff should move to the front desk, accept an easier role, or yield her Team Lead position reflected age stereotyping rather than legitimate performance concerns.

106.    Under the ADEA, an employer may not discriminate against an employee because of age, and age-based stereotyping is probative of discriminatory intent. See *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-78 (2009); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-49 (2000).

## H. Vitalant failed to accommodate Plaintiff's disability and instead treated her restrictions as grounds to demote or displace her

107.    Following Plaintiff's surgeries, Plaintiff could not fully perform certain manual tasks without accommodation or temporary adjustment.

108.    Plaintiff informed Vitalant of these restrictions.

109.    Rather than engage in a good-faith interactive process, Vitalant effectively told Plaintiff to return at full duty, use vacation, take unpaid leave, or risk termination.

110.    Vitalant also treated Plaintiff's restrictions as a reason to move her away from Team Lead duties and toward lower-status front-desk work.

111.    Vitalant did not provide Plaintiff a fair and lawful accommodation process.

14

112.    Vitalant did not respect Plaintiff's temporary medical restrictions.

113.    Vitalant instead weaponized Plaintiff's impairment and recovery as leverage to push her out of her position.

## I. Plaintiff was ordered to emulate unsafe blood-handling practices she believed violated policy and law

114.    Lopez directed Plaintiff to "shadow" Walter Knob.

115.    Plaintiff objected because Knob allegedly used unsafe blood-handling practices, including the use of rubber bands in ways Plaintiff believed could cause overdraws or underdraws, improper timing with ice or refrigeration, and other improper donor-floor procedures.

116.    Plaintiff also objected because Knob had demeaned Plaintiff on age-related grounds and because Plaintiff believed his methods jeopardized donor safety and blood integrity.

117.    Nevertheless, Lopez insisted that Plaintiff work with Knob and emulate his methods.

118.    Plaintiff refused to adopt what she believed were unsafe, unlawful, unsanitary, or policy-violating practices.

119.    Lopez then threatened that management could place Plaintiff on another performance plan if she refused.

120.    Plaintiff reasonably understood these threats as retaliation for raising safety concerns, for refusing to engage in practices she considered unlawful or improper, and for opposing discriminatory and retaliatory treatment.

15

**J. Plaintiff's EEOC charge and protected activity**

121. Plaintiff filed an EEOC charge alleging age discrimination, disability discrimination, retaliation, hostile environment, and related unlawful treatment.

122. Filing a charge with the EEOC is protected activity under the ADEA and the ADA.

123. Participating in an EEOC proceeding is also protected activity.

124. Plaintiff had also previously engaged in protected opposition by complaining internally about age-related comments, disability-related mistreatment, and treatment she reasonably believed was discriminatory or retaliatory.

125. The Tenth Circuit recognizes that protected opposition need not use "magic words," but it must convey concern that the employer is engaging in unlawful discrimination. See *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008).

126. Plaintiff alleges that her complaints did convey concern about unlawful age- and disability-based treatment, retaliatory treatment, and mistreatment tied to her injury and restrictions.

**K. Vitalant's post-charge mandatory arbitration rollout**

127. After Plaintiff filed her EEOC charge, and while that charge remained pending, Vitalant announced and/or attempted to impose a new mandatory arbitration agreement on employees as a condition of continued employment.

128. Chief People Officer Manny Ocasio circulated a message to Vitalant people leaders stating that Vitalant was introducing a new "Mutual Agreement to Arbitrate."

129.    The message stated that all team members would be required to sign the agreement as a condition of continued employment.

130.    The message further stated that the agreement would require Vitalant and team members to resolve employment-related legal claims through arbitration rather than in court.

131.    Plaintiff alleges that this arbitration rollout occurred after her charge was filed and before the EEOC had issued a notice of right to sue.

132.    Plaintiff further alleges that the timing of this rollout, the requirement that employees sign as a condition of keeping their jobs, and the subject matter of the agreement—employment-related legal claims—would deter a reasonable employee from pursuing or continuing to pursue statutory discrimination claims.

133.    The anti-retaliation provisions of the federal employment statutes are designed to protect employees from employer conduct that might well dissuade a reasonable worker from making or supporting a discrimination charge. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

134.    Plaintiff alleges that a mandatory "sign or lose your job" arbitration demand, imposed while an EEOC charge is pending and directed at employment-related claims, qualifies as materially adverse under *Burlington Northern* when used in a retaliatory or coercive manner.

135.    Plaintiff does not allege that arbitration is per se unlawful in every circumstance. The Supreme Court has held that employment arbitration agreements are generally enforceable. See *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001).

136.    But enforceability of arbitration in the abstract does not authorize an employer to retaliate against an employee for filing a charge, to chill protected activity, or to interfere with non-waivable EEOC rights.

137.    As the Supreme Court held in E.E.O.C. v. Waffle House, Inc., an employee's agreement to arbitrate does not curtail the EEOC's independent authority to investigate and pursue enforcement actions, and it does not bar an individual from filing a charge with the EEOC. As the Supreme Court has made clear, an arbitration agreement does not eliminate the EEOC's authority, nor does it extinguish a worker's right to file a charge with the EEOC

138.    EEOC guidance likewise provides that an employer may not interfere with an employee's protected right to file a charge, participate in an investigation, hearing, or proceeding, or communicate with the EEOC.

139.    Plaintiff alleges that Vitalant's post-charge arbitration rollout was not neutral in its practical effect or timing as applied to Plaintiff, but instead was part of an escalating course of conduct intended to intimidate employees, narrow their options, and chill recourse to federal civil-rights enforcement.

140.    Plaintiff further alleges that if the Court concludes this post-charge arbitration event constitutes a separate discrete retaliatory act under *Morgan* and *Martinez*, Plaintiff should be permitted to amend or supplement after additional EEOC exhaustion, and the allegations should in all events be considered as evidence of motive, animus, and retaliatory design.

## VI. CLAIMS FOR RELIEF

**COUNT I**

**AGE DISCRIMINATION IN VIOLATION OF THE ADEA**

**29 U.S.C. § 623(a)**

141.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

142.     The ADEA makes it unlawful for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a)(1).

143.     Plaintiff was, at all relevant times, at least forty years old and therefore within the class protected by the ADEA.

144.     Plaintiff was qualified for her Team Lead position and performed it competently for years.

145.     Vitalant, through its managers and agents, repeatedly treated Plaintiff as too old for her role, too old to keep up, and lacking in "modern" or computer skills.

146.     Vitalant also suggested that younger or preferred replacements were better suited for Plaintiff's position.

147.     Vitalant downgraded Plaintiff's evaluation, used unsupported accusations against her team, imposed a performance plan despite Plaintiff's lack of prior corrective history, pressured Plaintiff toward a lower-status role, and threatened her continued employment.

148.     Age-based comments by decisionmakers or influential supervisory personnel are circumstantial evidence of discriminatory motive.

149.     Plaintiff alleges that age was a determinative factor, and at minimum a but-for cause, in Vitalant's adverse treatment of her.

150.     The adverse treatment included but was not limited to the downgraded review, the PIP, the threatened removal from the Team Lead role, the pressure to shift to front-desk work, the humiliation and false accusations, and the threatened termination.

151.     Vitalant's stated reasons, if any, were pretextual.

152.     Plaintiff suffered economic loss, emotional distress, humiliation, reputational damage, and other harms as a result.

## COUNT II

## ADEA RETALIATION

## 29 U.S.C. § 623(d)

153.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

154.     The ADEA prohibits retaliation against an employee because the employee opposed practices made unlawful by the ADEA or participated in an investigation, proceeding, or litigation under the Act.

155.     Plaintiff engaged in protected activity by opposing age-based comments and treatment, by complaining internally about discriminatory treatment, and by filing an EEOC charge alleging age discrimination and retaliation.

156.     Vitalant knew of Plaintiff's protected activity.

157.     After Plaintiff engaged in protected activity, Vitalant subjected her to materially adverse actions, including but not limited to the downgraded evaluation, the performance-improvement plan, threats of termination, pressure to accept front-desk work, humiliation, refusal of a neutral HR process, and other actions that would dissuade a reasonable worker from pursuing statutory rights.

158.     Under *Burlington Northern*, retaliation includes employer conduct that might dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

159.     The timing and sequence of events support a causal inference.

160.     Plaintiff further alleges that the post-charge mandatory arbitration rollout—requiring employees to sign an arbitration agreement as a condition of continued employment—was itself materially adverse, retaliatory, and designed to chill enforcement activity.

161.     Even if the Court determines that the post-charge arbitration requirement must be separately exhausted before serving as a standalone federal retaliation claim, it remains probative evidence of retaliatory motive and should be considered as background evidence under *Morgan*.

162.     Vitalant's retaliatory conduct caused Plaintiff damages and continuing harm.

**COUNT III**

**DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE**

**ADA, 42 U.S.C. § 12112(a), (b)(5)(A)**

163.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

164.    Plaintiff had an actual disability within the meaning of the ADA, had a record of such impairment, and/or was regarded as disabled by Vitalant.

165.    Plaintiff's hand conditions and post-surgical limitations substantially limited one or more major life activities, including manual tasks, gripping, lifting, pinching, typing, and working.

166.    Plaintiff was qualified to perform the essential functions of her job with reasonable accommodation.

167.    Vitalant knew of Plaintiff's condition, surgeries, restrictions, and need for accommodation.

168.    Vitalant nevertheless failed to engage in the interactive process in good faith.

169.    Vitalant instead required Plaintiff to return to work contrary to restrictions, use earned vacation to bridge medically necessary time off, accept unpaid leave, or risk termination.

170.    Vitalant also pressured Plaintiff away from her Team Lead role and toward front-desk work because of her physical condition.

171.    Vitalant treated Plaintiff's disability and work restrictions as an inconvenience and as leverage to diminish her job status and security.

172.    Vitalant's conduct constituted discrimination because of disability and a failure reasonably to accommodate Plaintiff.

173.     Plaintiff suffered damages as a direct and proximate result.

174.     To the extent the Court determines that final administrative prerequisites for this ADA claim were not complete at the moment suit was filed, Plaintiff requests a stay or leave to amend/supplement upon issuance of the notice of right to sue, rather than dismissal with prejudice, because exhaustion is nonjurisdictional. See *Fort Bend County*, 587 U.S. at 548-52; *Lincoln*, 900 F.3d at 1185.

## COUNT IV

## ADA RETALIATION

## 42 U.S.C. § 12203(a)

175.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

176.     The ADA prohibits retaliation against any individual because that individual opposed an act or practice made unlawful by the ADA or because the individual made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the ADA.

177.     Plaintiff engaged in protected activity by requesting accommodation, reporting disability-related mistreatment, objecting to being forced back to full duty despite restrictions, complaining internally, and filing an EEOC charge alleging disability discrimination and retaliation.

178.     Vitalant knew of Plaintiff's protected activity.

179.     After Plaintiff engaged in that activity, Vitalant took materially adverse action against her, including threatening her employment, forcing her into leave choices,

23

downgrading her evaluation, imposing a pretextual PIP, denying a neutral HR avenue, pressuring her out of her role, and escalating scrutiny and coercion.

180. Vitalant's actions would have dissuaded a reasonable employee from seeking accommodation or filing an EEOC charge.

181. The temporal proximity, combined with the pattern of escalating treatment and pretextual justifications, supports a strong inference of retaliatory motive.

182. Vitalant's post-charge arbitration rollout also supports and independently constitutes retaliatory conduct to the extent administratively exhausted, because a demand that employees sign away a judicial forum as a condition of continued employment while charges are pending would deter a reasonable employee from continuing protected activity.

183. Plaintiff suffered damages as a result.

**COUNT V**

**ADA INTERFERENCE, COERCION, INTIMIDATION, AND THREATS**

**42 U.S.C. § 12203(b)**

184. Plaintiff realleges and incorporates by reference all preceding paragraphs.

185. The ADA separately makes it unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of rights granted or protected by the ADA.

24

186. Plaintiff exercised ADA-protected rights by disclosing her impairment, seeking to work within restrictions, resisting forced full-duty return contrary to medical limitations, and pursuing EEOC relief.

187. Vitalant, through its managers and agents, coerced, threatened, intimidated, and interfered with Plaintiff's exercise of those rights by telling her she must return at full duty, use earned leave, or face job loss; by refusing a neutral HR process; by weaponizing her medical status to pressure a role change; and by escalating disciplinary threats after Plaintiff asserted her rights.

188. Vitalant's conduct interfered with Plaintiff's ability to seek accommodation, to preserve her position, and to pursue her statutory remedies without intimidation.

189. Vitalant's post-charge arbitration rollout further interfered with ADA-protected rights to the extent it was used as a coercive device to chill pursuit of discrimination claims and to pressure employees to surrender a judicial forum as the price of continued employment.

190. Plaintiff suffered injury as a result.

**COUNT VI**

**DECLARATORY AND INJUNCTIVE RELIEF**

**28 U.S.C. §§ 2201-2202**

191. Plaintiff realleges and incorporates by reference all preceding paragraphs.

192. An actual and justiciable controversy exists between the parties concerning Plaintiff's federal statutory rights, including whether Vitalant may retaliate against

employees for pursuing EEOC relief and whether Vitalant may use a mandatory

arbitration rollout in a coercive or retaliatory manner to chill protected activity.

193.     Plaintiff seeks a declaration that Vitalant may not retaliate against Plaintiff for

filing or pursuing an EEOC charge, requesting accommodation, or opposing age- or

disability-based discrimination.

194.     Plaintiff further seeks a declaration that any arbitration agreement imposed by

Vitalant cannot lawfully waive, prevent, or chill Plaintiff's right to file a charge with the

EEOC, participate in an EEOC investigation, cooperate with the EEOC, or obtain any

relief that federal law reserves to the EEOC or preserves to charging parties. See *EEOC

v. Waffle House, Inc.*, 534 U.S. 279, 289-96 (2002).

195.     Plaintiff also seeks injunctive relief prohibiting further retaliation, requiring

removal of retaliatory evaluation and PIP materials from her employment records,

requiring a lawful accommodation process, and prohibiting enforcement of any

arbitration policy or agreement in a manner that retaliates against or chills protected civil-

rights activity.

## VII. REQUEST FOR STAY OR LEAVE TO SUPPLEMENT IN THE ALTERNATIVE

196.     Plaintiff pleads in the alternative because some federal claims may depend on the

timing of EEOC processing and any notice of right to sue.

197.     If the Court concludes that any ADA-based claim or any standalone retaliation

claim based on the post-charge arbitration event is not yet fully exhausted, Plaintiff

requests:

a. a stay of those claims pending exhaustion and issuance of the appropriate notice;

26

b. or, alternatively, leave under Fed. R. Civ. P. 15(a) and/or 15(d) to amend or supplement the Complaint once the administrative prerequisites are completed.

198.    Rule 15 embodies a liberal amendment policy, and supplementation is especially appropriate where post-filing events arise out of the same employment relationship and alleged course of retaliation.

199.    Plaintiff specifically preserves her position that the arbitration-agreement event grew out of the protected activity already before the EEOC and is therefore at minimum admissible background evidence, while also preserving her alternative position that she may separately exhaust and supplement if required by *Morgan*, *Martinez*, *Jones*, and *McDonald-Cuba*.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Vitalant, Inc., and award the following relief:

A. A declaration that Defendant violated the ADEA and the ADA as alleged herein;

B. A declaration that Defendant retaliated against Plaintiff for protected activity and interfered with Plaintiff's ADA-protected rights;

C. Preliminary and permanent injunctive relief prohibiting further retaliation, coercion, intimidation, interference, discriminatory discipline, or forced role displacement;

D. An order rescinding, removing, or nullifying the downgraded evaluation, the PIP or improvement plan, and any derivative disciplinary materials;

27

E. Reinstatement to the full status, duties, prestige, and terms of Plaintiff's Team Lead position, to the extent those were diminished;

F. Reasonable accommodation and a lawful interactive process going forward;

G. Back pay, front pay, lost benefits, and all other economic damages recoverable by law;

H. Compensatory damages to the full extent permitted by law;

I. Liquidated damages on the ADEA claims to the extent Defendant's violations were willful;

J. Pre-judgment and post-judgment interest;

K. Costs of suit and, if counsel appears, attorney fees to the extent authorized by statute;

L. In the alternative, a stay and leave to amend or supplement upon exhaustion of any claim the Court finds not yet fully exhausted;

M. Such other and further relief as the Court deems just and proper.

## IX. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 20th day of March 2026.

**/s/ Jo Dolmas**
**JO DOLMAS**
Plaintiff, Pro Se
616 Albion Street
Denver, Colorado 80220

28

**Affidavit**

State of Colorado
County of Denver

I, Jo Dolmas, depose and state as follows:

I am over the age of eighteen and competent to make this Affidavit. I have personal knowledge of the facts set forth herein unless otherwise stated, and, if called as a witness, I could and would testify competently thereto.

My current residence address is 616 Albion Street, Denver, Colorado 80220.

The facts stated in this complaint are true and correct to the best of my knowledge, information, and belief.

I declare under oath that I have read the foregoing Complaint, understand its contents, and that the statements made herein are true and correct to the best of my knowledge, information, and belief.

**/s/ Jo Dolmas**
**JO DOLMAS**
Plaintiff, Pro Se
616 Albion Street
Denver, Colorado 80220
Telephone: 303-324-7648
Email: joadol@hotmail.com